UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Arlene M. Woellert,                                          Civil No. 06-1778 (PAM/JSM)

           Plaintiff,

v.                                                           **MEMORANDUM AND ORDER**

Advanced Communication Design,
Inc. and Berwood Hill Inn, LLC,

           Defendants.

---

This matter is before the Court on cross-Motions for Summary Judgment. For the reasons that follow, the Court grants Defendants' Motion and denies Plaintiff's Motion.

**BACKGROUND**

Plaintiff Arlene M. Woellert is suing Defendants Advanced Communication Design, Inc. and Berwood Hill Inn, LLC for minimum wage and overtime compensation under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., and the Minnesota Fair Labor Standards Act (MFLSA), Minn. Stat. § 177.21 et seq.

**A.**    **Woellert's Employment at Berwood Hill Inn**

Woellert worked at Berwood Hill Inn, a bed and breakfast in Lanesboro, Minnesota, from June 2003 to April 2006. She initially worked as a part-time gardener. In December 2003, she began working full-time as director of hospitality and housekeeping.[1] In that

---

[1] Woellert assumed the full-time position when the former innkeeper informed Berwood Hill Inn that he was taking an indefinite leave of absence at the end of 2003. The parties dispute whether Woellert took over as the innkeeper at that time. Defendants contend that Woellert did and assumed all of the responsibilities of managing the inn. (Moberg Aff. Ex. 1 (Scibora Decl.) ¶¶ 7-9; id. Ex. 9 (Woellert Dep.) at 183-84, 212 (testimony that Woellert represented to third parties that she was the innkeeper); see also Am. Compl. ¶ 3 (stating that Woellert

capacity, Woellert oversaw the quotidian operations of the inn and ensured that guests were satisfied. In particular, she greeted guests and handled customer issues, recruited and trained staff, modified work schedules and approved time cards,[2] managed budgets and created expense reports, planned and coordinated events, decorated and cleaned the inn, scheduled maintenance and repairs, purchased supplies and goods, planned and cooked gourmet meals, marketed the inn, dealt with local government officials on behalf of the inn, answered the telephone, and provided a security presence at the inn. Woellert also supervised and directed workers who served meals and cleaned the inn. However, the parties dispute whether Woellert had authority to hire or fire employees, set wages and schedules, or impose discipline.

Woellert generally worked eight hours per day and several evenings per week. In addition, she usually stayed at the inn for three overnight shifts per week.[3] When she began her full-time position in December 2003, she received an annual salary of $20,800. Her annual salary increased to $22,880 in January 2004 and to $25,000 in February 2004. In

---

"served as the innkeeper" from approximately November 2004 until her resignation).) However, Woellert denies that she replaced the innkeeper. (Woellert Aff. ¶ 1.)

[2] Woellert initially created work schedules for Berwood Hill Inn. However, after staff complained about how Woellert was scheduling them, Geralyn Charleston took over the responsibility. Thereafter, Charleston created and faxed to Woellert proposed work schedules, which Woellert modified as necessary.

[3] During an overnight shift, Woellert performed at least two hours of housekeeping. In addition, if guests were present, she was required to prepare and serve an evening snack and was expected to stay awake until all guests returned in the evening. She was allowed to sleep on the overnight shift, but was required to attend to any guest need or overnight phone call.

December 2004, Woellert started receiving an "adder" of $1,103.67 per month to compensate her for working weekends. She also received $50 for each overnight shift and received additional money to cover travel costs in 2004 and 2005. Her total compensation was $37,432 in 2004 and $46,911 in 2005.

**B.   Defendants**

Berwood Hill Inn was the childhood home of Fran Scibora, who converted the home to a bed and breakfast in 1998. Scibora is the sole owner of Berwood Hill Inn, LLC. Berwood Hill Inn, LLC owns Berwood Hill Inn, and its real property. Berwood Hill Inn, LLC has not reached $500,000 in annual gross revenue since it opened in 1998.

Scibora also is the chief operating officer and part owner of Advanced Communication Design, Inc. (ACD), which develops and manufactures in-store, interactive digital audio and video systems. All ACD work is completed in its Bloomington, Minnesota facility. ACD has no ownership interest in Berwood Hill Inn or Berwood Hill Inn, LLC. Woellert concedes that none of her work at the inn was related to ACD products or services. (Moberg Aff. Ex. 9 (Woellert Dep.) at 48.)

Nonetheless, several documents identified Woellert as an ACD employee. Her paychecks and income tax forms identified ACD as her employer. Her personnel file contained several ACD forms regarding wage changes, bonuses, and job title changes. Her health and dental benefits were provided under ACD plans,[4] and when Woellert terminated

---

[4] The Berwood Hill Inn employee benefit plan differed from the ACD plan as to eligibility and benefit types. Scibora explained that she added the Berwood Hill Inn plan on as a rider

3

her employment at Berwood Hill Inn, she received a Consolidated Omnibus Budget Reconciliation Act benefit continuation notice that identified her as a participant in the ACD employee benefit plan. Finally, when Woellert inquired about accrued unemployment compensation benefits from her work at the inn, the Minnesota Department of Economic Security identified her employer as ACD.

In addition, at least two ACD employees performed administrative functions for Berwood Hill Inn. Geralyn Charleston handled human resources issues relating to both ACD and Berwood Hill Inn. Specifically, she processed the payroll and created employment offer and termination letters. Charleston processed the Berwood Hill Inn payroll based on records Woellert provided and communicated sporadically with Woellert about staffing and payroll processing issues. Shannon Pryde, an accounting administrator for ACD, regularly processed and paid bills on behalf of both ACD and Berwood Hill Inn. While at the inn, Woellert sent Pryde receipts relating to inn expenses; Pryde then paid the bills and tracked expenses. Pryde and Woellert sporadically spoke about billing issues.

Defendants explain that Berwood Hill Inn used ACD, as well as its third-party payroll provider, to complete the administrative functions because Berwood Hill Inn was a very small business with few employees and it was easier and less expensive to have ACD complete those tasks. Defendants further explain that Berwood Hill Inn, LLC had its own

---

to the ACD plan to offer Berwood Hill Inn workers benefits they would not otherwise receive. (Moberg Aff. Ex. 6 (Scibora Dep.) at 33-34; see also id. Ex. 7 (Charleston Dep.) at 14, 45.)

tax identification numbers but the third-party payroll provider would not use two separate company tax identification numbers.  Consequently, the ACD name and employer identification number appeared on paychecks and tax forms because the third-party payroll provider would not process the payroll for Berwood Hill Inn unless the ACD tax number was used.  Defendants also note that the Berwood Hill Inn records were kept separate from ACD records, and that ACD financial statements show that Berwood Hill Inn, LLC owes ACD for payroll costs to individuals who worked at Berwood Hill Inn.  Finally, Defendants report that Berwood Hill Inn, LLC has its own bank accounts, paid its own expenses, has its own insurance policy covering Berwood Hill Inn and the surrounding property, and has a worker's compensation policy that covers only individuals who work at Berwood Hill Inn.

**DISCUSSION**

Each party seeks summary judgment on several grounds.  Woellert asks the Court to find as a matter of law that her employer was ACD, that Defendants did not pay her properly under the salary basis test of the FLSA, and that Defendants cannot show that she was an exempt employee under either the FLSA or the MFLSA.  Defendants seek summary judgment on grounds that ACD was not Woellert's employer and that Woellert was an exempt employee.

**A.     Standard of Review**

Summary judgment is proper when the evidence viewed in a light most favorable to the nonmoving party demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, only disputes of facts that might affect the outcome of the suit under the governing substantive law will preclude summary judgment. Id. The moving party bears the burden of showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to all inferences that may be reasonably drawn from the underlying facts in the record. Meriwether v. Caraustar Packaging Co., 326 F.3d 990, 992-93 (8th Cir. 2003). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings—it must set forth specific facts showing that there is a genuine issue for trial. Anderson, 477 U.S. at 256.

**B.     The FLSA Claim**

Woellert claims that ACD violated the FLSA by failing to pay her overtime compensation.[5] A threshold issue is whether ACD employed Woellert. Woellert claims

---

[5] Woellert does not assert an FLSA claim against Berwood Hill Inn, LLC because its annual gross sales volume has never met FLSA's threshold requirement. See 29 U.S.C. §§ 206(a), 207(a) (providing that FLSA applies to employees who are "engaged in commerce or in the production of goods for commerce" or who are "employed in an enterprise engaged in commerce or in the production of goods for commerce"); 29 U.S.C. § 203(s)(1) (defining an "enterprise engaged in commerce or in the production of goods for commerce" as an enterprise whose "annual gross volume of sales" is at least $500,000).

ACD employed her; ACD claims it did not.

To determine whether an employment relationship exists, courts generally look to the economic reality of the relationship. Blair v. Wills, 420 F.3d 823, 829 (8th Cir. 2005) (citing Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33 (1961) (explaining that "'economic reality' rather than 'technical concepts' is . . . the test of employment" under FLSA)). Courts consider several factors:

> (1) the degree of control over the manner in which the work is performed; (2) the worker's opportunity for profit or loss depending on his managerial skill; (3) the worker's investment in equipment or materials, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree or permanence of the working relationship; and (6) whether the service rendered is an integral part of the employer's business.

Catani v. Chiodi, Civ. No. 00-1559, 2001 WL 920025, at *3 (D. Minn. Aug. 13, 2001) (Frank, J.) (citing Donovan v. DialAmerica Mktg., Inc., 757 F.2d 1376, 1382 (3d Cir. 1985)). The totality of the circumstances—not any one factor—determines whether an individual is an employee. Id. (citing Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668, 675 (1st Cir. 1998)); see also Reich v. ConAgra, Inc., 987 F.2d 1357, 1361 (8th Cir. 1993) (citing Marshall v. Truman Arnold Distrib. Co., 640 F.2d 906, 908 (8th Cir. 1981) (stating that existence of an employer/employee relationship "depends upon the circumstances of the whole activity").

A joint employment relationship may exist when "the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at

different times during the workweek," including when: (1) there is an arrangement between the employers to share the employee's services; (2) one employer acts for the other employer in relation to the employee; or (3) the employers share control of the employee "by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer." 29 C.F.R. § 791.2.

> In determining whether a joint employer relationship exists under the economic realities test, courts tend to narrow the inquiry and ask whether the alleged employer: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.

Catani, 2001 WL 920025, at *6 (citing Bonnette v. Cal. Health & Welfare Agency, 704 F.2d 1465, 1470 (9th Cir. 1983)) (internal quotations omitted).

Section 791.2 and the Catani establish as a matter of law that ACD did not employ Woellert. First, it is undisputed that Woellert performed work only for Berwood Hill Inn's benefit. Indeed, Woellert performed no work relating to ACD's products or services and did not know what ACD produced. Her work at Berwood Hill Inn did not affect ACD's business at all. Second, the record shows that Scibora—not ACD—controlled Berwood Hill Inn and determined all terms and conditions of Woellert's employment. That control and authority logically arose from Scibora owning Berwood Hill Inn, LLC—not from her role in ACD. Neither Charleston nor Pryde supervised or controlled any condition of Woellert's employment, as they merely provided administrative assistance to Woellert.

Although ACD processed payroll and provided personnel forms for individuals who worked at Berwood Hill Inn, that does not establish that ACD employed those individuals. Processing payroll and issuing tax forms are insufficient to establish an employment relationship. See Catani, 2001 WL 920025, at *2, *4, *7. ACD merely performed administrative tasks and provided a means by which Scibora streamlined costs and increased benefits to Berwood Hill Inn employees. ACD exercised no control over how Berwood Hill Inn operated. Moreover, all records relating to Berwood Hill Inn were maintained separate from ACD records. Finally, several other indicia of separate status exist, including separate bank accounts, worker's compensation insurance, and liability insurance. Thus, the totality of circumstances indicates that ACD was not Woellert's employer. Accordingly, the FLSA claim against ACD fails as a matter of law.[6]

## C. MFLSA Claim

The only remaining claim is the MFLSA claim. Because the Court has dismissed the only claim over which it had original jurisdiction, it declines to exercise supplemental jurisdiction over the MFLSA claim, see 28 U.S.C. § 1367(c)(3), and therefore dismisses that claim without prejudice.

**CONCLUSION**

The Court dismisses with prejudice the FLSA claim because Woellert has failed to

---

[6] Because the Court finds that ACD did not employ Woellert, the Court need not address the other issues raised relating to the FLSA claim such as whether Woellert was an exempt employee under the FLSA.

show that ACD employed her. The Court dismisses without prejudice the MFLSA claim for lack of jurisdiction. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Partial Motion for Summary Judgment (Docket No. 20) is **DENIED**;

2. Defendants' Motion for Summary Judgment (Docket No. 27) is **GRANTED**;

3. Count I of the Amended Complaint is **DISMISSED with prejudice**; and

4. Count II of the Amended Complaint is **DISMISSED without prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 6, 2007

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge